# EXHIBIT 1

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF NEW YORK**

Case No. 1:16-cv-06276-AJN

_____

**SEOUL VIOSYS CO., LTD.**

**Plaintiff,**

v.

**P3 INTERNATIONAL CORPORATION**

**Defendant.**

_____

SUPPLEMENTAL EXPERT REPORT
OF E. FRED SCHUBERT, PH.D.

**Submitted November 27, 2017**

CONFIDENTIAL

I am the same E. Fred Schubert, Ph.D. who submitted a declaration on June 23, 2017 ("Declaration") in support of Plaintiff Seoul Viosys Co., Ltd.'s ("SVC") Claim Construction Brief and an Expert Report on August 8, 2017 ("the August 8 Report"). This report supplements the opinions expressed in my August 8 Report to address two issues: (1) infringement of U.S. Patent No. 7,982,207 (which I understand was subject to a stay at the time of my original report); and (2) infringement of the claims U.S. Patent No. 9,269,867 under the Court's current construction.

1. I have only updated the portions of my report to the extent necessary to address the supplemental opinions expressed herein. I expressly incorporate by reference my August 8 Report, which provides much of the necessary background and related disclosures in support of my opinions.

## I. MATERIALS CONSIDERED

2. The bases for my opinions and any testimony that I may be called upon to give include the testing and documents identified in: (1) my August 8 Report; (2) Exhibit B to my August 8 Report; (3) this Supplemental Report; and (4) Exhibit A to this Supplemental Report. I will also rely on my knowledge, education and more than 30 years of experience.

## II. MY TASK

3. I have been asked by counsel to examine the asserted patents and the analytical photographic and electron microscopy data procured through analysis of the Trapper 2, and to provide my opinion as to whether:

- the Trapper 1 (P3 Company's P7880 Model) and/or Trapper 2 (P3 Company's P7885 Model) meet claims 1 and 6 of U.S. Patent No. 7,982,207 ("the '207 patent") either literally or under the doctrine of equivalents; and

- the Trapper 2 meets claims 1, 2 and 11-14 of U.S. Patent No. 9,269,867 ("the '867 patent") either literally or under the doctrine of equivalents.

### III. THE PERSON OF ORDINARY SKILL IN THE ART

4. I have reviewed the '207 patent, which was not part of my formal analysis in the August 8 Report. It is my opinion that the person of ordinary skill in the art for that additional patent is the same as set forth in my Claim Construction Declaration, that is: The person of ordinary skill in the art would have had an undergraduate degree in electrical engineering or physics with four years of industry experience in the design or manufacture of LEDs. Alternatively, that person could have had a master's degree in those fields with two years of industry experience in the design or manufacture of LEDs, or instead, a doctoral degree in those fields with activity in the design or manufacture of LEDs.

### IV. ANALYSIS

#### A. U.S. Patent No. 7,982,207 – claims and 1 and 6 Are Infringed by the P7885

5. The '207 patent issued on July 19, 2011 and is entitled, "Light Emitting Diode." The '207 patent describes and claims an LED with improved current spreading. This results in maximizing the amount of light that is produced and transmitted to the external environment, and provides a more efficient LED.

6. Asserted claims 1 and 6 of the '207 patent are each directed to "[a] light emitting diode." Claim 6 depends from claim 1.

7. Claim 1 of the '207 patent states:

> 1. A light emitting diode, comprising:
>    a substrate;
>    an n-type semiconductor layer, an active layer, and a p-type semiconductor layer arranged on the substrate;

3

        a transparent electrode layer arranged on and in contact with the p-type semiconductor layer, the transparent electrode layer comprising an opening exposing the p-type semiconductor layer;
           a current blocking portion arranged in the opening; and
           an electrode pad arranged on the current blocking portion.

8.    Claim 1 recites "[a] light emitting diode." A Scanning Electron Microscope ("SEM") image of a UV LED from P3's P7885 ("Trapper 2") is provided below. P3 has not disputed that the Trapper 2 comprises a light-emitting diode.



9.    The first two elements of claim 1 recites "a substrate [and] an n-type semiconductor layer, an active layer, and a p-type semiconductor layer arranged on the substrate." The UV LED of the Trapper 2 includes a substrate, an n-type semiconductor layer, an active layer, and a p-type semiconductor layer arranged on the substrate. The epitaxial layers above the substrate include an n-type semiconductor layer that includes an n-type dopant for injecting electrons into the active layer and a p-type semiconductor layer includes a p-type dopant for injecting holes into the active layer. The Focus Ion Beam Scanning Electron Microscope ("FIB-SEM") image (right below) indicates the substrate and provides the approximate locations of the n-type semiconductor layer, active layer, and p-type semiconductor layer. The injection of electrons and holes into the active layer results in electrons and holes combining with the production of a photon, which is fundamental to the operation of an LED. P3 has not disputed that these elements of claim 1 are met by the accused device.

4



10. The third element of claim 1 recites "a transparent electrode layer arranged on and in contact with the p-type semiconductor layer, the transparent electrode layer comprising an opening exposing the p-type semiconductor layer." The UV LED of the Trapper 2 includes a transparent electrode layer arranged on and in contact with the p-type semiconductor layer, the transparent electrode layer comprising an opening exposing the p-type semiconductor layer. The FIB-SEM image (right below) and the enlarged image at the bottom show a transparent electrode layer made of Indium Tin Oxide (ITO). As the image shows, the ITO layer ends toward the center of the overlying p-electrode. The area without ITO indicates an opening in the transparent electrode where the underlying p-type layer has been exposed. P3 has not disputed that this element of claim 1 is met.



5

11. The fourth element of claim 1 recites "a current blocking portion arranged in the opening." The UV LED of the Trapper 2 includes a current blocking portion arranged in the opening in the transparent ITO layer. A thin layer of chromium (Cr) between the P-type electrode pad and P-type semiconductor layer exists within the opening in the transparent ITO layer.[1] The thin chromium layer exists between the gold of the p-electrode and the underlying semiconductor in the FIB-SEM image below. The interface between the chromium layer and the underlying p-type layer within the opening comprises a current blocking portion. P3 has not disputed that this element is met.



12. The final element of claim 1 recites "an electrode pad arranged on the current blocking portion." The UV LED of the Trapper 2 includes an electrode pad arranged on the current blocking portion. The FIB-SEM image above shows the gold electrode pad as a relatively bright portion at the top left of the image. The gold electrode pad overlies the chromium layer that comprises the current blocking portion. P3 has not disputed that this element is met.

13. Claim 6 depends from claim 1 and recites "[t]he light emitting diode of claim 1, wherein the electrode pad extends into the opening of the transparent electrode layer." The gold electrode

---

[1] The thin layer of Cr was identified by elemental analysis.

pad of the UV LED of the Trapper 2 extends into the opening in the transparent ITO layer. This arrangement can be seen in the FIB-SEM image below, where the gold electrode pad extends into the area where the ITO layer is absent. P3 has not disputed that this element is met.



**B.    U.S. Patent No. 7,982,207 – claims and 1 and 6 Are Infringed by the P7880**

14.    Claim 1 recites "[a] light emitting diode." A Scanning Electron Microscope ("SEM") image of a UV LED from P3's P7880 ("Trapper 1") is provided below. P3 has not disputed that the Trapper 1 comprises a light-emitting diode.



15.    The first two elements of claim 1 recite "a substrate [and] an n-type semiconductor layer, an active layer, and a p-type semiconductor layer arranged on the substrate." The UV LED of the Trapper 1 includes a substrate, an n-type semiconductor layer, an

7

active layer, and a p-type semiconductor layer arranged on the substrate. The epitaxial layers above the substrate include an n-type semiconductor layer that includes an n-type dopant for injecting electrons into the active layer and a p-type semiconductor layer that includes a p-type dopant for injecting holes into the active layer. The Focus Ion Beam Scanning Electron Microscope ("FIB-SEM") image (right below) indicates the substrate (located at the bottom of SEM image) and provides the approximate locations of the n-type semiconductor layer, active layer, and p-type semiconductor layer. The injection of electrons and holes into the active layer results in electrons and holes combining with the production of a photon, which is fundamental to the operation of an LED. P3 has not disputed that these elements of claim 1 are met.



16.     The third element of claim 1 recites "a transparent electrode layer arranged on and in contact with the p-type semiconductor layer, the transparent electrode layer comprising an opening exposing the p-type semiconductor layer." The UV LED of the Trapper 1 includes a transparent electrode layer arranged on and in contact with the p-type semiconductor layer, the transparent electrode layer comprising an opening exposing the p-type semiconductor layer. The FIB-SEM image (below, top right) and the enlarged image at the bottom show a transparent electrode layer made of a thin layer of nickel-gold.[2] As the enlarged image shows, the nickel-

---

[2] The Ni-Au (nickel gold) layer was identified by elemental analysis.

8

gold layer ends at a location between the center and the outside edge of the overlying p-electrode. The area without nickel-gold constitutes an opening in the transparent electrode where the underlying p-type layer has been exposed. P3 has not disputed that this element is met.



17.     The fourth element of claim 1 recites "a current blocking portion arranged in the opening." The UV LED of the Trapper 1 includes a current blocking portion arranged in the opening in the transparent nickel-gold layer. A thin layer of chromium (Cr) between the P-type electrode pad and P-type semiconductor layer exists within the opening in the transparent nickel-gold layer.[3] The thin chromium layer exists between the gold of the p-electrode and the underlying semiconductor in the FIB-SEM image below. The interface between the chromium

---

[3] The thin layer of Cr was identified by elemental analysis.

9

layer and the underlying p-type layer within the opening comprises a current blocking portion. P3 has not disputed that this element is met.



18.     The final element of claim 1 recites "an electrode pad arranged on the current blocking portion." The UV LED of the Trapper 1 includes an electrode pad arranged on the current blocking portion. The enlarged FIB-SEM image above shows the gold electrode pad as a relatively bright portion at the top of the image. The gold electrode pad overlies the chromium layer that comprises the current-blocking portion. P3 has not disputed that this element is met.

19.     Claim 6 depends from claim 1 and recites "[t]he light emitting diode of claim 1, wherein the electrode pad extends into the opening of the transparent electrode layer." The gold electrode pad of the UV LED of the Trapper 1 extends into the opening in the transparent nickel-gold layer. This arrangement can be seen in the enlarged portion of the FIB-SEM image below, where the gold electrode pad extends into the area where the nickel-gold layer is absent. P3 has not disputed that this element is met.

**P-electrode**

**opening**



### C. U.S. Patent No. 9,269,867 – claim 1, 2, and 11-14

20. In my August 8 Report, I provided a full analysis of claims 1, 2, and 11-14 of the '867 patent. I understand that after my report was finalized and served, the Court issued a claim construction order interpreting the phrase "exposed from" to mean "removed from, via etching, photolithography, or other methods." (Dkt. 112 at 9.)

21. Claim 1 of the '867 patent states:

> **1.** A light-emitting device, comprising:
> a first conductivity-type semiconductor layer disposed on a substrate;
> an active layer disposed on the first conductivity-type semiconductor layer;
> a second conductivity-type semiconductor layer disposed on the active layer;
> an irregular convex-concave pattern disposed on a surface of the first conductivity-type semiconductor layer; and
> a first electrode pad,
> wherein the irregular convex-concave pattern comprises convex portions and concave portions, the convex portions comprising irregular heights, the concave portions comprising irregular depths,
> wherein the first conductivity-type semiconductor layer comprising **the irregular convex-concave pattern is exposed from the active layer and the second conductivity-type semiconductor layer,**
> wherein the irregular convex-concave pattern is disposed between the first electrode pad and the second conductivity-type semiconductor layer,
> wherein the first conductivity-type semiconductor layer comprises first, second, and third N-GaN layers, the first and third N-GaN layers being doped with a higher density of n-type impurities than the second N-GaN layer, and

11

> wherein a first part of the concave portions of the irregular convex-concave pattern extend to a portion of the second N-GaN layer or over an entire region of the second N-GaN layer, or extend to an upper region of the first N-GaN layer.

22. I have reviewed the Court's analysis[4] and understand the Order to mean that a portion of the active layer and second conductivity-type semiconductor layer must have existed at some prior time over the first conductivity-type semiconductor layer (which has the irregular convex-concave pattern) and that an intervening removal process step must have been performed. I understand that Seoul Viosys submitted a Motion for Reconsideration (Dkt. 114). I have also reviewed the transcript of the hearing of October 24, 2017 during which the Court stated "I did not intend to issue a process limitation in the construction that has been challenged on the motion for reconsideration." (Trans. of Oct. 24, 2017 at 2:24-3:2.) The construction to be applied, therefore, remains "under submission." *Id.* at 7:7.

23. Based on the Court's current construction, in my opinion, infringement of the "exposed from" requirement is easily confirmed to be met based on the evidence of record. For example, the two FIB-SEM images provided below show the irregular convex-concave pattern on the exposed portions of the n-type layer, *i.e.*, the lower regions between the gold n-type pad and the raised plateau containing the active layer and p-type semiconductor layer. In every commercial GaN-based LED manufacturing process of which I am aware, the process steps include epitaxially growing the n-type, active, and p-type layers over the entire surface of a large substrate from which many individual LED chips are later created. It is only through subsequent processing steps (post-epitaxial growth processing steps) that regions of the individual layers are removed to expose the underlying materials.

---

[4] The Court has ordered the phrase "exposed from" to mean "removed from, via etching, photolithography, or other methods."

 

24. My report represents a summary of my opinion and the bases and reasons therefore. To the extent any additional information is produced by any party, for example, if any additional positions are taken by P3 not reflected in its Responses to Plaintiff's interrogatories, I will be prepared to incorporate any such additional information into my report, or otherwise to amend or supplement my report as appropriate to the extent permitted under the Federal Rules of Civil Procedure, the Local Rules of the Southern District of New York, or any order of the Court.

By: *E.F. Schubert*

E. Fred Schubert, Ph.D.

November 27, 2017



# EXHIBIT A

## **EXHIBIT A – ADDITIONAL MATERIALS CONSIDERED**

U.S. Patent No. 7,982,207

File History for U.S. Patent No. 7,982,207

Claim Construction Opinion and Order (D.I. 112)

Plaintiff's Motion and Memorandum for Reconsideration (D.I. 114 and 115)

Transcript of proceedings dated October 24, 2017 (D.I. 128)