UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: SEP 3 0 2018

| |
|---|
| Seoul Viosys Co., Ltd., |
| Plaintiff, |
| —v— |
| P3 International Corporation, |
| Defendant. |

16-CV-6276 (AJN)

MEMORANDUM
OPINION & ORDER

ALISON J. NATHAN, District Judge:

This is a patent infringement action brought by Plaintiff Seoul Viosys Co. against

Defendant P3 International Corp. concerning seven patents: U.S. Patent Nos. 7,982,207 ("the

'207 Patent), 9,203,006 ("the '006 Patent"), 8,692,282 ("the '282 Patent"), 8,168,988 ("the '988

Patent"), 8,664,693 ("the '693 Patent"), 9,269,867 ("the '867 Patent"), and 7,951,626 ("the '626

Patent"). Dkt. No. 8 ¶¶ 9–22. Plaintiff brings various claims for patent infringement arising

under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*

Before the Court are two pending matters. First, upon referral per Dkt. No. 74, United

States Magistrate Judge Sarah Netburn conducted claim construction proceedings, *see Markman

v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996), and

issued an Opinion and Order constructing the patents at issue in this action. Dkt. No. 112.

Plaintiff has objected to the construction of one term in that Opinion and Order. Second, the

parties have submitted cross-motions for partial summary judgment.

The Court begins by addressing Plaintiff's objection to Judge Netburn's Opinion and

Order. It then turns to the pending motions for summary judgment, beginning with a threshold

dispute central to the summary judgment record before the Court. For the reasons set forth below, the Court ADOPTS Judge Netburn's Opinion and Order in full; GRANTS in part and DENIES in part Defendant's motion for partial summary judgment; and GRANTS in part and DENIES in part Plaintiff's motion for partial summary judgment.

## I. Judge Netburn's *Markman* Opinion Is Adopted in Full

For purposes of its review of the *Markman* opinion, the Court adopts and refers the reader to Magistrate Judge Netburn's summary of the case and applicable law. Additionally, the Court adopts without further discussion those aspects of the Opinion and Order to which neither party has objected. As explained below, the Court rejects Plaintiff's objection to the Opinion and Order, and accordingly adopts the Opinion and Order's construction of the contested term.

### A. Procedural Background

Magistrate Judge Netburn issued an Opinion and Order constructing the patent claims on September 22, 2017. Dkt. No. 112. Plaintiff moved for reconsideration and Judge Netburn reaffirmed her findings on November 29, 2017. Dkt. Nos. 114, 130. Plaintiff then filed an objection to the Opinion and Order's construction of the term "exposed from" in the '867 patent, and Defendant filed its response. Dkt. Nos. 131, 132.

### B. Legal Standard

The appropriate standard of review applicable to a magistrate judge's ruling hinges on whether the ruling was dispositive or nondispositive. For non-dispositive determinations, the Court is required to "consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). An order is "clearly erroneous" if "on the entire evidence, [the district court] is left with the definite and firm conviction that a mistake has been committed." *Easley v. Cromartie*, 532 U.S. 234, 242 (2001) (quotation

omitted). "A decision is contrary to law if it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Levy v. Young Adult Inst., Inc.*, 13-CV-2861 (JPO), 2016 WL 4402038, at *1 (S.D.N.Y. Aug. 18, 2016) (quotation omitted). For dispositive determinations, "the district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed R. Civ. P. 72(b)(3).

"There is a split in authority as to whether claim construction is a nondispositive pretrial matter." *Alexsam, Inc. v. MasterCard Int'l Inc.*, No. 15-CV-2799 (ILG)(SMG), 2018 WL 2849692, at *1 n.1 (E.D.N.Y. June 11, 2018), (citing cases); *see also Mantissa Corp. v. Ondot Sys., Inc.*, No. 4:15-CV-1133, 2017 WL 1373771, at *1 n.2 (S.D. Tex. Jan. 13, 2017), *adopted by* 2017 WL 1383884 (S.D. Tex. Apr. 13, 2017). Because the Court agrees with Judge Netburn's construction of the contested term, it need not resolve whether claim construction is dispositive either as a general matter or in the precise factual circumstances of this case.

### C.     The Disputed Term

Plaintiff objects to Magistrate Judge Netburn's construction of only one term: "exposed from" as used in U.S. Patent No. 9,269,867 ("the '867 Patent"). Claim 1 of the '867 Patent, in relevant part, provides:

> "A light-emitting device, comprising:
> a first conductivity-type semiconductor [layer] disposed on a substrate;
> an active layer disposed on the first conductivity-type semiconductor layer;
> a second conductivity-type semiconductor layer disposed on the active layer;
> an irregular convex-concave pattern disposed on a surface of the first conductivity-type semiconductor layer; and
> a first electrode pad,
> [. . .]
> wherein the first conductivity-type semiconductor layer comprising the irregular convex-concave pattern is *exposed from* the active layer and the second conductivity-type semiconductor layer[.]

Dkt. No. 112, *Markman* Op. at 7 (citing '867 Patent at Column 11, Lines 6–23) (emphasis and some brackets in *Markman* Op.). In her Opinion and Order, Magistrate Judge Netburn concluded that "exposed from" should be constructed as "removed from, via etching, photolithography, or other methods." *Markman* Op. at 9. She reached this conclusion based on the relevant text within Claim 1 and based on other usage of the same term in the specification of the '867 Patent.

As to the text of the provision, Judge Netburn reasoned that "'exposed from' logically follows 'disposed on' in the sequence" described in Claim 1. *Id.* at 8. That is, "[a]fter the active layers and the second conductivity-type semiconductor layers are placed over the first conductivity-type layer," the claim uses "exposed from" to "describe[ ] how specific portions of the first conductivity-type semiconductor layer"—that is, the "irregular convex-concave pattern"—"are then removed or separated from the active and second conductivity-type semiconductor layers." *Id.*

Second, Judge Netburn referred to other portions of the specification of the '867 Patent, and noted that the patent "consistently uses 'exposed' to refer to removing the two layers placed above or over the first conductivity-type semiconductor layer via methods like photolithography and etching." *Id.* For example, the claim provides that "forming the LED requires '*exposing* the first conductivity-type semiconductor layer by *partially removing* the active layer and the second conductivity-type semiconductor layer through photolithography and etching," after which "[a]n irregular convex-concave pattern is . . . created 'on the exposed first conductive type semiconductor layer by forming a photosensitive pattern on the mask.'" *Id.* (quoting '867 Patent at Column 2, Lines 23–26; Column 2, Lines 31–33) (emphasis retained); *see also, e.g., id.* at 8–9 (quoting '867 Patent at Column 7, Lines 60–62 to Column 8, Lines 1-8) ("The first conductive

type semiconductor layer is *partially exposed by a patterning process*, for example,

photolithography and etching, using masks[.] . . . Then, etching is performed using the

photosensitive layer pattern as a [mask] such that the second conductive type semiconductor

layer and the active layer are *partially removed to expose* the first conductive type semiconductor

layer.") (internal brackets omitted and emphasis retained).

### D. Plaintiff's Objection

Plaintiff disagrees with this interpretation. According to Plaintiff, the term "exposed

from" should be construed as "uncovered by" because it "corresponds to a physical, structural

aspect of the device" such that it should be distinguished from a "process step." *Id.* at 9 (citing

Dkt. No. 97, Pl. Claim Constr. Mem. at 6–8). Its primary objection is that, according to Plaintiff,

patent law requires that a term like "exposed from" by default should be constructed according to

its "structural sense"—not as a process limitation. Dkt. No. 131, Pl. Objections at 5–6.

In its objections, Plaintiff makes several additional arguments. First, it argues that P3

"unambiguously conceded that exposed from is a structural limitation in the claim." *Id.* at 5

(quotation and brackets omitted). Because the court's role in claim construction is "to resolve

genuine disputes between the parties," Plaintiff contends the magistrate judge erred by diverging

from the agreed-upon construction. *Id.* (citing *O2 Micro Int'l Ltd. V. Beyond Innovation Tech.

Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008)). Second, Plaintiff disputes whether the cited portions

of the specification support the conclusion the magistrate judge reached. *Id.* at 7. Other uses of

"exposed," in Plaintiff's view, are directed to the structure of the finished project. For example,

the patent specification provides that "the irregular convex-concave pattern . . . enhances light

extraction efficiency by refracting light entering *the exposed surface* of the first conductive type

semiconductor layer." *Id.* at 7 (quoting '867 Patent at Column 4, lines 57-60) (internal brackets

omitted). Moreover, Plaintiff points out that the specification was designed to guide both process and product limitations, suggesting that terms used therein are not necessarily useful for interpreting the product limitation alone. *Id.* Moreover, the Court should not read limitations from the specification into the claims. *Id.* (citing *Sjolund v. Musland*, 847 F.2d 1573, 1581 (Fed. Cir. 1988)).

Plaintiff next disagrees that the claim implicates a "sequence" at all, pointing the Court to inventors' use of the term "disposed below" as positional rather than temporal or sequential. *Id.* at 8. Plaintiff also maintains that the magistrate judge neglected the prosecution history of the patent, which it claims makes clear that the patent applicant elected to pursue device rather than method claims. *Id.* at 8–9. And finally, Plaintiff urges that the definition selected by the magistrate judge creates an illogical construction when inserted into the contested portion of the claim. *Id.* at 9.

### E.    Discussion

The Court adopts the magistrate judge's construction for the following reasons. First, the magistrate judge's definition accords with patent law's interpretive presumptions. Patent law does not require that judges conducting claim construction neglect the ordinary meaning of a disputed term merely because the ordinary meaning evokes a relationship. It is true that terms that "when read in context, describe the product more by its structure than by the process used to obtain it," should be construed as "product limitations, not process limitations." *Regents of Univ. of Minn. v. AGA Med. Corp.*, 717 F.3d 929, 938 (Fed. Cir. 2013) (quotation and internal brackets omitted). But as Judge Netburn explained in dismissing Plaintiff's reconsideration request: "in construing these terms as product limitations, they still must 'be given their ordinary meanings with respect to the claimed product's structure' and be consistent with the specification, which is

6

'the single best guide to the meaning of a disputed term.'" Dkt. No. 130, Nov. Op. & Order, at 4

(quoting *Regents*, 717 F.3d at 938–39). In sum, the court is not "impermissibly import[ing] a

process limitation into a product claim" if the ordinary meaning "require[s] a particular

relationship" between the apparatus's parts. *Regents*, 717 F.3d at 938.

Plaintiff nonetheless argues that the temporal implication it finds in the magistrate

judge's construction of "exposed from" constitutes an impermissible process limitation. The

Court disagrees. The magistrate judge's interpretation of "exposed from" no more interposes a

process limitation than do the Federal Circuit's interpretations of "affix," "conjoint," and

"insert," as applied and described in *Regents*. *Id.* at 938–39; *see also id.* (citing *Miken*

*Composites, LLC v. Wilson Sporting Goods Co.*, 515 F.3d 1331, 1337 (Fed. Cir. 2008)). In any

of these cases, what is dispositive is the ordinary meaning and consistency with product

specifications. The magistrate judge convincingly explained why both factors favor her

interpretation in this case.

The fact that Judge Netburn's interpretation is consistent with treating "exposed from" as

a structural limitation disposes of most of Plaintiff's additional arguments. As to the remainder,

the Court agrees with the magistrate judge that other uses of the term "exposed from" in the

specification support her interpretation; Plaintiff's additional citation, noted above, does not do

otherwise. To the contrary, as Defendant points out, the preceding sentence refers directly to

partial exposure by etching—supporting rather than undermining Judge Netburn's construction.

*See* Dkt. No. 132, Def. Response at 5 (citing '867 Patent at Column 4, lines 53-60). Judge

Netburn did not read limitations from the specification into the claims, but rather followed the

Federal Circuit's explicit instructions to treat the specification as "the single best guide to the

meaning of a disputed clam term." *Markman* Op. at 3 (quoting *Vitronics Corp. v. Conceptronic,*

*Inc.*, 90 F.3d 1576, 1583 (Fed. Cir. 1996)). Finally, Plaintiff is incorrect that Judge Netburn's construction implies removal of the wrong layer. As Defendant's response explains, that interpretation is not faithful to Judge Netburn's construction. *See* Def. Response at 6.

Accordingly, Plaintiff's objection to Judge Netburn's construction of "exposed from" is denied. As no additional portion of Judge Netburn's Opinion and Order was contested by the parties, the Court adopts the Opinion and Order in full.

## II.     The Parties' Cross-Motions for Summary Judgment Are Granted in Part and Denied in Part

The Court turns next to the cross-motions for summary judgment. The Court begins with a threshold evidentiary issue concerning Plaintiff's asserted evidence of patent infringement, including the findings of Plaintiff's infringement expert, Dr. Fred Schubert. Because its resolution of the evidentiary issue could affect the facts in the summary judgment record, the Court addresses it before explaining that record and its conclusions regarding each party's motion.

### A.     Factual Background

This case is in an unusual posture because the parties contest the disputed nature of one fact on which the bulk of the summary judgment record depends: whether the patent infringement evidence produced by Plaintiff, examined by its expert, and forming the foundation of Plaintiff's case, is in fact based off of Plaintiff's tests of Defendant's P7880 Bug Trap and P7885 Bug Trapper II.

The following limited foundation is undisputed. Plaintiff supports its patent infringement contentions based on "hundreds of pages" of electron microscopy data it alleges derive from tests of Defendant's products. Dkt. No. 158, Pl. MSJ Reply at 12; Dkt. No. 151, Def. MSJ Br. at 15. In addition to producing these documents to Defendant, Plaintiff supplied them to its own patent

8

infringement expert, Dr. Fred Schubert, who produced reports identifying the bases in the data

for Plaintiff's infringement contentions. *See generally* Dkt. No. 140, Schubert Decl.; Dkt. No.

141, Schubert 2d Decl. But Dr. Schubert did not conduct the underlying tests himself, and relied

on representations that the tests were produced by Plaintiff's patent team based on orders of

Defendant's products obtained via Amazon shipment. The parties disagree as to whether the

record contains sufficient evidence for a jury to conclude that these tests were in fact of

Defendant's product. If it does not, then Plaintiff's expert report is of no import in ascertaining

the summary judgment record or resolving the matters before the Court.

### 1. There Are Disputed Facts Concerning Whether Plaintiff Tested Defendant's Product

"In determining whether a fact is disputed, the Court must focus on whether a reasonable

fact-finder *could* find for the nonmoving party." *SEC v. Amerindo Inv. Advisors, Inc.*, No. 05-

CV-5231 (RJS), 2014 WL 405339, at *2 (S.D.N.Y. Feb. 3, 2014). The court's task therefore "is

not to weigh the evidence," but instead "to view the evidence in the light most favorable to the

party opposing summary judgment, to draw all reasonable inferences in favor of that party, and

to eschew credibility assessments." *Weyant v. Okst*, 101 F.3d 845, 854–55 (2d Cir. 1996). But

disputes must be "genuine." To show a genuine dispute, the nonmoving party must "offer some

hard evidence showing that its version of events is not wholly fanciful." *D'Amico v. City of New

York*, 132 F.3d 145, 149 (2d Cir. 1998). "Conclusory allegations, conjecture, and speculation . . .

are insufficient to raise a genuine issue of fact." *Kerzer v. Kingly Mfg.*, 156 F.3d 396, 400 (2d

Cir. 1998). The Court finds that the parties' submissions preserve such a genuine dispute.

The Court turns first to the positions the two parties take with respect to the question

whether Plaintiff tested Defendant's product, before explaining why it finds that disputed facts

remain.

### a. Parties' Positions on the Existence of a Disputed Fact

Defendant argues that Plaintiff neglected to provide any support for its contention that the infringement results analyzed by Dr. Schubert were based on Defendant's products. It contends that (a) Dr. Schubert's analysis was not based on his firsthand experience testing the devices; and (b) Plaintiff's 30(b)(6) witness, designated to testify to "*all* testing, analysis, and conclusions" concerning patent infringement in this case, was unable to "relate any of the Seoul Viosys testing to a P3 product." Def. MSJ Br. at 16.

To support this claim, Defendant notes the following exchanges from the 30(b)(6) deposition. First, the deponent stated that although he thought that Seoul Viosys had tested two of the items depicted in the Amazon order form, he was "not sure" about the third item depicted. Dkt. No. 153-4, Ex. 4 to Del Valle Decl., Seo Dep. at 16:16–25. Second, the deponent stated that he did not know whether a box containing Defendant's product was the box received with the shipment. *Id.* at 17:2–12. Third, the deponent expressed uncertainty about the identity and circumstances of the person who allegedly shipped the product to Seoul Viosys. *Id.* at 18:9–19:25. Fourth, the deponent was not able to identify a circuit board depicted in its electron microscopy data. *Id.* at 28:24–30:14. Instead, he stated that he was not sure whether the board came from the product shipped to Seoul Viosys from the United States, and that he was not sure how he would find out. *Id.* The deponent also expressed uncertainty regarding from which P3 product LEDs depicted in the electron microscopy data came and in response to other inquiries drawing on the electron microscopy data. *Id.* at 31:8–11, 41:3–20, 45:2–7, 96:6–16, 99:2–8, 102:10–14, 106:24–25. According to Defendant, in sum, the deponent "testified that he was not involved in any of the testing of the accused products in the case," "could not identify the

product that was purportedly tested in support of its infringement contentions," and "was unable to relate of [sic] any of the Seoul Viosys testing to a P3 product." Def. MSJ Br. at 16.

Plaintiff disagrees, maintaining that its 30(b)(6) witness did provide sufficient testimony to establish that Defendant's products were tested and to preclude a contrary finding. It directs the Court to an exchange in which the witness was asked whether he was "aware of the testing of the products in this case . . . as we sit here today," and the witness responded affirmatively. Pl. MSJ Reply at 14 (citing Seo Dep at 13:20–24); *see also* Seo Dep. at 14:17–15:25 (affirming that an order page "show[ed] the products that . . . Seoul Viosys tested"). It further emphasizes that Mr. Seo's uncertain responses were a reasonable product of the fact that "[a] deposition is not a quiz"—not evidence of a genuine dispute. Pl. MSJ Reply at 15 (quoting *Dealer Comp. Servs., Inc. v. Curry*, No. 12-CV-3457 (JMF)(JLC), 2013 WL 499520, at *2 (S.D.N.Y. Feb. 7, 2013)) (brackets added). It construes Defendant's difficulties in the 30(b)(6) as a product of its own lack of preparation, or even an attempt to undermine the deposition altogether. *Id.* at 15–16.

### b.    A Genuine Dispute Remains

The Court cannot agree with either party that this fact is undisputed. A reasonable jury could find that Plaintiff's patent team did—or did not—in fact test the product in question.

It is true that Plaintiff's 30(b)(6) deponent expressed uncertainty regarding the shipping history of P3's products to Korea, the meaning of particular images depicted in the electron microscopy printout, and even whether imaged items were "taken from the product contained in the box" in which its product was allegedly transmitted to Korea. *See, e.g.*, Seo Dep. at 29:20–22, 30:8-14, 31:8–11. On the other hand, the deponent clearly agrees that an order page for the 2003 LED Bug Trapper II "show[ed] the products . . . that Seoul Viosys tested." *Id.* at 15:24–25. The record indicates that the 30(b)(6) deponent's expressions of uncertainty stem in significant

part from his role as supervisor of the patent team. *See id.* at 96:12–97:25. Although this record is slim, it is not conclusive, and inferences about the 30(b)(6) deponent's credibility could be drawn in either direction. Notably lacking from the record are any further tests or evidence, provided by either party, confirming or denying the 30(b)(6) deponent's representations.

Because the Court finds that this fact remains disputed, it declines to grant Defendant's request to exclude Plaintiff's expert report or its factual findings. At one point in its papers, Defendant dismisses the testing results provided by Plaintiff as apparently unintelligible "photographs that appeared to have been produced by scanning electron microscopy and other photographs labeled merely"FIB3," "TEM," etc.," but lacking "laboratory notes or annotations identifying what was tested or explaining anything about the methods used or how plaintiff's conclusions were reached." Def. MSJ Br. at 15. But Defendant provides no further explanation of why—if Defendant's product in fact was tested—Dr. Schubert's analysis of the electron microscopy data is suspect. To the extent Defendant wished to contest this point, it could have disputed Dr. Schubert's findings or hired a competing expert. *See* Pl. MSJ Reply at 12–13.

## 2. Remaining Factual Record

With the question of whether Plaintiff tested Defendant's product unresolved, the summary judgment record contains few undisputed facts. The Court assumes the parties' familiarity with their competing presentations, and summarizes where relevant those facts necessary for its resolution of the pending matters.

## B. Summary Judgment Standard

Summary judgment is appropriate when the moving party shows that there is no "genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue of fact is genuine if 'the evidence is such that a reasonable jury could

return a verdict for the nonmoving party,'" and material if it "might affect the outcome of the suit under the governing law.'" *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

As explained above, in applying this standard, the Court must "resolve all ambiguities, and credit all factual inferences that could rationally be drawn, in favor of the party opposing summary judgment." *Brown v. Henderson*, 257 F.3d 246, 251 (2d Cir. 2001) (quotation marks and citation omitted). But if "opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" for purposes of evaluating a motion for summary judgment. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The party seeking summary judgment bears the initial burden of demonstrating "that no genuine issue respecting any material fact exists." *Gallo v. Prudential Residential Servs., LP*, 22 F.3d 1219, 1223 (2d Cir. 1994). When the nonmoving party bears the burden of proof at trial, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Finally, in resolving cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001) (quotation omitted).

### C. Defendant's Partial Motion for Summary Judgment is Granted in Part and Denied in Part

Defendant seeks summary judgment on the following bases. First, it maintains that it is entitled to judgment as a matter of law that Plaintiff's '207 LED patent claims are invalid under the on-sale bar. Second, it maintains that it is entitled to judgment as a matter of law that

13

Plaintiff can obtain no relief for alleged infringement of its '626 process patent under the innocent infringer safe harbor. Third, it argues that it is entitled to judgment as a matter of law on all infringement claims because it believes that Plaintiff has not provided an admissible basis for any of its contentions. Fourth, it seeks judgment as a matter of law on the issue of damages. The Court addresses each argument in turn. In sum, it grants summary judgment on the on-sale bar and innocent infringer bases, but denies the remainder.

### 1. Defendant's Motion for Summary Judgment as to '207 is Granted

The Court turns first to Defendant's argument that it is entitled to summary judgment on its affirmative defense that Plaintiff's '207 patent is invalid as a matter of law. Specifically, Defendant contends that Plaintiff's own infringement allegations render its '207 patent anticipated. Plaintiff responds that there are insufficient undisputed facts to prove, as a matter of law, that the product it alleges infringes its patent was identical to the product placed on sale before it obtained the patent. The Court disagrees, and grants Defendant's motion for summary judgment on this ground.

As an initial matter, Plaintiff maintains that Defendant was not entitled to raise this invalidity position because it was not properly disclosed in its invalidity contentions under the Local Rules. Pl. MSJ Reply at 8–9. Because the position at minimum was disclosed in Defendant's previously filed motion for judgment on the pleadings, the Court declines to find any purported nondisclosure dispositive. *See* Def. MSJ Br. at 8–9 n.10; Dkt. No. 30.

### a. A *Patentee* May Prove Anticipation

"A person shall be entitled to a patent unless . . . (1) the claimed invention was . . . in public use, on sale, or otherwise available to the public before the effective filing date of the claimed invention." 35 U.S.C. § 102(a)(1). Accordingly, "[a]n accused infringer . . . may overcome a patent's presumption of validity by presenting 'clear and convincing evidence that there was a

14

definite sale or offer to sell more than one year before the application for the subject patent, and that the subject matter of the sale or offer to sell fully anticipated the claimed invention,' or rendered it obvious." *Cummings v. Adidas USA*, 716 F. Supp. 2d 323, 330–31 (S.D.N.Y. 2010) (quoting *Elan Corp., PLC v. Andrx Pharm., Inc.*, 366 F.3d 1336, 1340 (Fed. Cir. 2004)). In evaluating whether the on-sale bar applies, courts ascertain the "critical date" one year prior to the filing of the patent application, and evaluate whether two conditions are satisfied: (1) "the product must be the subject of a commercial offer for sale"; and (2) "the invention must be ready for patenting." *Id.* at 331 (quoting *Pfaff v. Wells Electrs., Inc.*, 525 U.S. 55, 67 (1998)).

In the "typical case[,] . . . the patentee has placed some device on sale prior to the critical date and the accused infringer must demonstrate that this device actually embodied or rendered obvious the patented invention." *Evans Cooling Sys., Inc. v. Gen. Motors Corp.*, 125 F.3d 1448, 1451 (Fed. Cir. 1997), *abrogated on other grounds by Pfaff*, 525 U.S. at 66–68 & n.11. But a *patentee* can—unintentionally—carry the alleged infringer's burden in those rare cases in which the patentee alleges that a product on sale prior to the critical sales date infringes its patent. *Vanmoor v. Wal-Mart Stores, Inc.*, 201 F.3d 1363, 1366 (Fed. Cir. 2000) (explaining that the infringer's burden was satisfied by the patentee's "allegation" that "the cartridges that were the subject of the pre-critical date sales" "infringe[d] the . . . patent"). For example, in *Vanmoor*, the alleged infringers argued successfully that the patent was invalid because "certain of the accused caulking cartridges were identical to cartridges manufactured, sold, and used prior to the critical date" for the subject patent. *Id.* at 1365. In *Evans Cooling*, similarly, "the entire basis of the lawsuit" was the patentee's contention that the device put on sale prior to the critical date "contain[ed] a cooling system that infringe[d]" its patent. 125 F.3d at 1451.

### b.    In This Case, Plaintiff's Infringement Allegations and the Summary Judgment Record Prove Anticipation

Defendant argues that Plaintiff has made the same error here: its infringement allegations are sufficient to demonstrate the existence of prior art invalidating the '207 Patent. The Court agrees.

It is undisputed that the critical date in this case is September 3, 2007. *See* Dkt. No. 8-1, Ex. D, U.S. Patent No. 7,982,207. It further appears to be undisputed that Defendant placed two different orders for the P7880 Bug Trap, one of which dated to March and was delivered in May 2007, and the other dating to February or March of 2008. Dkt. No. 159-1 at 2–3. And it is undisputed that, as Plaintiff emphasizes, the purchase orders specified: "[f]unction and quality to be the same or better as received samples." Dkt. No. 159-1 at 2–3. Further, Defendant maintains, and Plaintiff does not dispute, that it sold copies of this product as early as July of 2007. *See* Dkt. No. 159-2 at 2. With respect to whether Plaintiff's expert's test of the P7880 revealed that it meets each and every element of the asserted claims of the '207 LED patent, facts do remain disputed: as discussed, the parties disagree whether Plaintiff tested Defendant's product at all. Dkt. No. 152, Def. Response to Pl. Rule 56.1 ¶¶ 74–78; Dkt. No. 150, Def. Rule 56.1 ¶ 6 (purporting to admit to testing only for purposes of this argument). But Defendant need not make a "conditional admission" that its product was tested; rather, its point is that *if* its product was tested, Dr. Schubert's infringement contentions are sufficient to undermine Plaintiff's validity claims.

Plaintiff urges that the parties disagree, however, as to whether the product Defendant purchased prior to the critical date is identical to the product Defendant purchased after the critical date. And Plaintiff maintains that this fact is dispositive as a matter of law. Plaintiff urges that the *Vanmoor* and *Evans Cooling* cases contained the "essential premise" lacking in

this case: "that both the later and earlier products are identical." Pl. MSJ Reply at 6. In *Vanmoor*, for example, "affidavits . . . and documentary evidence show[ed] that the manufacturing specifications, component dimensions, and methods of operation of at least three of the accused cartridges were identical" to the pre-critical-date cartridges. *Vanmoor*, 201 F.3d at 1365. And in *Evans Cooling*, there was no dispute that the device put on sale contained the allegedly infringing cooling system. 125 F.3d at 1451. Supporting this conclusion, one court in this district has required that an alleged infringer "demonstrate that no genuine issue of material fact exists as to whether the accused version of [the product] is materially identical to that offered for sale" prior to the critical date. *ResQNET.Com, Inc. v. Lansa, Inc.*, 382 F. Supp. 2d 424, 438 (S.D.N.Y. 2005), *reversed on other grounds by* 594 F.3d 860 (Fed. Cir. 2010). In that case, the district court deemed the relevant facts disputed: the amended complaint did not allege that the pre- and post-critical date products were the same and the record did not clearly demonstrate the required material identity. *Id.* at 438.

The Court disagrees with Plaintiff for two reasons. First, the Court does not find that Plaintiff has preserved identity of the products as a disputed issue. Second, the Court disagrees with Plaintiff that the clear and convincing burden requires Defendant to demonstrate identity of the products at issue.

As to the factual record, the Court concludes as follows. By alleging that Defendant's sale of the P7880 product infringed its patent and seeking damages for each sale of the product after the date of the patent's issuance without regard to which batch the P7880 product came from, Plaintiff adopts the same assumption it criticizes Defendant for making. Plaintiff cannot have it both ways: it cannot both maintain that the identity of the products within each sale batch is a disputed fact and yet maintain that its test of one item of the product establishes infringement

17

as to all such products. *See Gammino v. Sw. Bell Tel. Co.*, 512 F. Supp. 2d 626, 637 (N.D. Tex. 2007) ("Gammino cannot have it both ways—he cannot recover for infringement on the basis of [the alleged infringing telephone service] if those same services existed in prior art.").

On this record, the legal standard requires no further showing by Defendant. It is not true that courts confronting *Vanmoor* claims have required a "side-by-side" comparison of the tested product and the prior art to confirm their identity. Indeed, as the Federal Circuit explained the principle, the defendant's burden could be "satisfied" by the patentee's "*allegation* that the accused cartridges infringe[d] the . . . patent." 201 F.3d at 1366 (emphasis added). It is true that this Court previously rejected Defendant's attempt to pursue this grounds for dismissal in its final disposition of Defendant's motion for judgment on the pleadings. *See Seoul Viosys Co. v. P3 Int'l Corp.*, No. 16-CV-6276 (AJN), 2018 WL 401511, at *3 (S.D.N.Y. Jan. 12, 2018). At that stage, the Court reached that conclusion because in this case, Plaintiff's allegations, standing alone, left the possibility that discovery would lead to disputed facts concerning the identity of the two batches of products. Accordingly, the Court emphasized that *Vanmoor* and *Evans Cooling* were decided at the summary judgment posture and in the absence of any "disputes as to whether the products offered for sale prior to the critical date included the patented features." *Id.* But now that summary judgment has arrived, the Court agrees with Defendant that no disputed fact remains.

Contrary to Plaintiff's position, district courts consistently apply the principle at issue here without demanding that alleged infringers affirmatively establish the identity of products offered for sale prior to and after the critical date. In *MMI, Inc. v. Rich Godfrey & Associates, Inc.*, for example, the district court explained that "prior infringement allegations and arguments alone could support a finding" of anticipation, notwithstanding the defendant's presentation of

18

comparative evidence. CV-15-00449-PHX-SPL, 2017 WL 4337316, at *4 (D. Ariz. Sept. 29, 2017). Similarly, in *Leader Technologies, Inc. v. Facebook, Inc.*, the court looked skeptically on a patentee's circumscribed interpretation of interrogatory responses stating that an on-sale product was covered by its patent. 770 F. Supp. 2d 686, 716–20 (D. Del. 2011). The patentee attempted to argue that the interrogatory admissions concerned only products offered for sale at the time those responses were made, and did not necessarily extend to earlier versions of the product on sale prior to the critical date. *Id.* But because the patentee failed to qualify its infringement statement in its interrogatory responses, there was evidence for the jury to conclude that the on-sale bar invalidated the patent at issue. *Id.* at 716, 722. And in *Cummings*, the district court rejected the plaintiff's attempt to argue that because the requests for admission in which they conceded infringement did not specify which models were infringing, the admissions should be cabined in scope. 716 F. Supp. 2d at 332. Despite the defendants' alleged failure to put on evidence that the product plaintiff called infringing was a true and accurate depiction of the product used for offers to sale prior to the on-sale bar date, because the plaintiff's infringement allegations "unequivocally admitted" infringement, they could not avoid application of the on-sale bar. *Id.* "If plaintiffs wanted to accuse some [models] but not others, they had a duty to qualify their responses appropriately"—something they had failed to do at any point over the course of discovery. *Id.* As Defendant convincingly explains, the remaining cases cited by Plaintiff are not to the contrary: in those cases, the patentee had *not* clearly asserted infringement of the defendant's prior art product. *See, e.g.*, *BroadSoft, Inc. v. CallWave Commc'ns, LLC*, 282 F. Supp. 3d 771, 788 (D. Del. 2017) (noting difference between initial and final infringement contentions).

As a final matter, while Plaintiff is correct that Defendant may have been in a better position to determine whether the two batches were identical, by seeking discovery of Defendant's samples, Plaintiff was equally capable of adducing evidence that contradicted that identity.

Accordingly, as there is no genuine dispute that the P7880 comprises each limitation of the claims of Plaintiff's '207 LED patent, Defendant is entitled to judgment as a matter of law as to the invalidity of that patent.

### 2.     Defendant's Motion for Summary Judgment As to '626 Is Granted

Defendant next argues that it is entitled to judgment as a matter of law on Plaintiff's '626 patent process claims because there is no genuine dispute that Defendants products were in its possession prior to its receipt of notice of Plaintiff's contention of infringement. The Court agrees.

### a.     The Innocent Infringer Safe Harbor

Patent law protects holders of process patents registered in the United States from importation of infringing goods under the following limited circumstances. Under 35 U.S.C. § 271(g), importers, offerors to sell, and sellers of products "made by a process patented in the United States" shall be liable as infringers if their importation, sale, or offer for sale occurs during the term of the process patent. But patent law simultaneously provides alleged infringers with certain safe harbors before a remedy for such infringement shall be granted or available. As relevant here, 35 U.S.C. § 287(b) provides a safe harbor for alleged infringers who did not have notice of infringement with respect to an underlying product before that product was in their possession or in transit to them. *Id.* § 287(b)(2). In particular, the statute provides that "[n]o remedies for infringement under section 271(g) shall be available" with respect to products for

which the patentee did not provide this notice. *Id.* Other safe harbors from § 271(g) use the

same language. *See, e.g., id.* § 271(g) (providing "no remedy may be granted for infringement

on account of the noncommercial use or retail sale of a product unless there is no adequate

remedy under this title for infringement on account of the importation or other use, offer to sell,

or sale of that product"); § 287(a) ("[I]n the event of failure to [mark in the terms provided by the

statute], no damages shall be recovered by the patentee in any action for infringement [with

certain exceptions].").

### b.    The Innocent Infringer Safe Harbor Applies Here

Defendant contends that its inventories of the products at issue were entirely in its

possession prior to receiving notice of the alleged patent infringement, and therefore that it is

entitled to the benefit of the innocent infringer safe harbor. Def. MSJ Br. at 12–13; Def. MSJ

Reply at 7–8. Plaintiff concedes that there is no dispute that Defendant did not receive the notice

contemplated by § 287(b) prior to acquiring these inventories. Pl. Reply at 10–11. But it argues

that § 287(b)(2) provides only a safe harbor with respect to *remedies*, not liability. *Id.*

Defendant responds that there can be no liability without an available remedy, and that an

adverse judgment on Plaintiff's process patent claim is therefore warranted. The Court agrees.

Other courts uniformly appear to agree with Defendant, and Plaintiff cites no

contradictory authority. When confronted with evidence that the defendant lacked the requisite

notice prior to importation of the underlying product, courts have found dismissal or summary

judgment appropriate notwithstanding the statute's references to "remedies" rather than

"liability." *See, e.g., Icon Laser Solutions, LLC v. Abercrombie & Fitch Co.*, No. 3:15-CV-3308

(EK), 2016 WL 7379138, at *3 (July 13, 2016) (concluding that the fact that the plaintiff was not

entitled to relief meant that the plaintiff had "no viable claim"); *Celanese Int'l Corp. v. Oxyde*

*Chems., Inc.*, 554 F. Supp. 2d 725, 729–30 (S.D. Tex. 2008) (granting summary judgment to defendant on plaintiff's 35 U.S.C. § 271(g) importation claim on the basis that there was no evidence defendant had knowledge that product was covered by process patent). Even when courts reject assertions of the innocent infringer safe harbor, they generally refer to adjudication of the issue as a question of liability. *See, e.g.*, *Eli Lilly & Co. v. Zenith Labs, Inc.*, 134 F. Supp. 2d 981, 982–83 (S.D. Ind. 2001) ("35 U.S.C. § 287(b)(2) provides that an importer of an infringing product is not liable for infringement under 25 U.S.C. § 271(g) unless it had notice of infringement with respect to that product.") (internal quotation omitted).

It is true that none of these courts explicitly confronted the question whether it is permissible to "conflate[ ]," Pl. MSJ Reply at 10, the statute's bar on remedies with a bar on liability. And Plaintiff might have argued that the patent provisions of the U.S. Code use other language when they unambiguously exempt infringers from liability. *See, e.g.*, 35 U.S.C. § 271(e)(1) ("It shall not be an act of infringement . . . "); *Id.* § 271(g) ("A product which is made by a patented process will, for purposes of this title, not be considered to be so made after," inter alia, "it is materially changed by subsequent processes."). Indeed—in the very different context of assessing whether patentees may collect extraterritorial damages—the Supreme Court has cautioned against "conflat[ing] legal injury with the damages arising from that injury." *WesternGeco LLC v. ION Geophysical Corp.*, 138 S. Ct. 2129, 2138 (2018).

But for present purposes, Plaintiff does not cite any case law supporting its position nor offer any reason why adjudication of liability in the absence of remedy constitutes a justiciable question,[1] and the Court finds the interpretation impliedly adopted by other courts to be a

---

[1] Plaintiff may have neglected to offer significant argument on this question because it "is no longer asserting infringement by P3 of the '626 patent," as suggested in its expert report. *See* Dkt. No. 147-1, Jeffords 2d Decl. at 1. While the Court does not treat this expert's characterization as dispositive, it suggests that the question of infringement liability may be of particularly little import in this case.

reasonable one. Accordingly, the Court finds that Defendant is entitled to judgment as a matter of law as to its sixth affirmative defense that Plaintiff is entitled to no remedy for alleged infringement of its Patent '626.

### 3. Defendant's Motion for Summary Judgment As to Noninfringement of the Remaining Patents is Denied

As discussed *supra*, Defendant raises an additional summary judgment ground on the novel theory that Plaintiff's alleged discovery malfeasance prevented it from establishing a genuine dispute in this matter. The Court explained above why it finds that disputed facts remain concerning whether Plaintiff tested Defendant's product, and that Plaintiff in fact introduced sufficient evidence that a jury could find in its favor. Accordingly, the Court rejects this summary judgment ground.

### 4. Defendant's Motion for Summary Judgment as to Damages is Denied

Defendant next argues that it is entitled to judgment as a matter of law that Plaintiff cannot prove damages at trial because the matters upon which its damages expert relies were impermissibly withheld from discovery and must be excluded—such that the remainder are insufficient to support his conclusions. Def. MSJ Br. at 21–22. Its contentions concerning this basis for summary judgment are similar to those presented above: that Plaintiff's 30(b)(6) deponent was too obstructive to establish the factual foundations for Plaintiff's damages expert's conclusions. Defendant further argues that Plaintiff's damages expert fails to provide an adequate explanation of his royalty rate, which it submits should have been based on the LED components. *Id.* at 23–25.

The record on this question is similar to the record described above. Although the 30(b)(6) deponent's testimony is not conclusive, a reasonable factfinder could determine that it was sufficient to establish that comparison of the relevant products occurred. As to Defendant's

criticisms regarding discovery withholding, the Defendant has not established that it is appropriate to exclude the damages expert's report. As discussed above, the Court finds that disputes remain as to the credibility of Plaintiff's 30(b)(6) deponent and the plausibility of the facts to which he testified. The Court finally declines to grant summary judgment on the royalty calculation question, which appears to present a factual dispute between the parties concerning the value of the underlying patents.

### D. Plaintiff's Partial Motion for Summary Judgment is Granted in Part and Denied in Part

Plaintiff seeks summary judgment on the following bases. First, it seeks summary judgment as to the validity of the '207, '006, '282, '693, and '867 patents. Dkt. No. 135, Pl. MSJ Br. at 1, 6–10. Then, it seeks summary judgment as to infringement of the '006, '282, '988, '693, '867, and '207 patents. *Id.* at 1, 10–15. Third, it seeks summary judgment denying Defendant's remaining affirmative defenses. *Id.* at 1, 15–18. Finally, it seeks summary judgment on damages. *Id.* at 1, 18–19.

The Court denies Plaintiff's motions for summary judgment concerning the '207 patent as moot in light of its disposition of Defendant's motion above. It grants Plaintiff's motion for partial summary judgment as to the validity of the '006, '282, '693, and '867 patents. The Court then denies Plaintiff's motion for partial summary judgment as to infringement of the '006, '282, '988, '693, and '867 patents. It finally grants summary judgment disposing of Defendant's remaining affirmative defenses and counterclaims and denies summary judgment on the question of damages.

### a. Plaintiff's Motion for Partial Summary Judgment as to the Validity of the '006, '282, '693, and '867 Patents is Granted

Plaintiff argues that it is entitled to summary judgment as to the validity of the '207, '006, '282, '693, and '867 patents because it maintains that Defendant failed to follow the Local Rules

for invalidity contention disclosures, Pl. MSJ Br. at 7–8; and failed to provide evidence or witnesses to support its invalidity contentions, Pl. MSJ Reply at 11–12. Defendant's only response is to insist that Plaintiff has not supported its request for summary judgment with facts illustrating that there is no genuine dispute such that it is entitled to judgment as a matter of law. Def. MSJ Br. at 28–29. Except as to the '207 patent, the Court finds for Plaintiff.

An issued patent, and each claim thereof, is presumed valid. 35 U.S.C. § 282(a). "A challenger must present clear and convincing evidence to overcome the presumption of validity." *ProBatter Sports, LLC v. Sports Tutor, Inc.*, 172 F. Supp. 3d 579, 582–83 (D. Conn. 2016) (citing *Microsoft Corp. v. i4i Ltd. P'ship*, 564 U.S. 91 (2011). In this case, Defendant has not identified any evidence that meets the high burden of "overcoming the deference that is due to a qualified government agency presumed to have done its job." *Dome Patent L.P. v. Lee*, 799 F.3d 1372, 1378–79 (Fed. Cir. 2015) (quotation omitted). With respect to the '207 patent, Defendant successfully demonstrated that the existence of prior art was an undisputed fact, and therefore that the presumption of validity was not warranted. But as to the remaining patents, Defendant has not produced any evidence to demonstrate invalidity or to suggest that any disputed facts concerning invalidity remain.

Accordingly, the Court grants summary judgment as to the validity of the remaining patents, and dismisses Defendant's third affirmative defense (anticipation); counterclaim I (patent invalidity); fourth affirmative defense (on-sale bar as to '207); and seventh affirmative defense (patent invalidity).

### b. Plaintiff's Motion for Partial Summary Judgment as to Infringement of the '006, '282, '693, and '867 Patents is Denied

Plaintiff next seeks summary judgment of infringement of the '006, '282, '693, '867, and '207 patents because it argues that the summary judgment record contains no evidence disputing

its expert's conclusions. Because the Court finds that disputed facts remain concerning whether Dr. Schubert's report reflects tests of Defendant's product, summary judgment on infringement is denied.

### c. Plaintiff's Motion for Summary Judgment on Defendant's Remaining Affirmative Defenses and Counterclaims is Granted

Plaintiff then seeks summary judgment on the following affirmative defenses and counterclaims drawn from Defendant's pleadings: (1) Defendant's first affirmative defense regarding inadequate service; (2) Defendant's second affirmative defense alleging failure to state a claim upon which relief can be granted; (3) Defendant's fifth affirmative defense restating its practicing-the-prior-art defense as a clam construction argument; (4) Defendant's ninth affirmative defense asserting that no damages may be recovered for acts of infringement prior to the issuance of the respective patent or more than six years prior to filing of the complaint; (5) Defendant's tenth affirmative defense raising laches and estoppel; and (6) Defendant's eleventh affirmative defense asserting patent misuse. Pl. MSJ Br. at 16–17.

Because Defendant's only response to these summary judgment grounds is cursory denial that Plaintiff has adequately alleged the absence of disputes of material fact, Def. MSJ Br. at 28–29, the Court deems these defenses waived. Accordingly, summary judgment on the above affirmative defenses is granted.

### d. Plaintiff's Motion for Summary Judgment on Damages is Denied

Plaintiff finally moves for summary judgment on damages. Its motion for summary judgment on damages as to the P7880 LED Bug Trap is denied as moot because the Court granted Defendant's motion for summary judgment with respect to the '207 patent. Its motion

for summary judgment on damages as to the P7885 Bug Trapper II is denied because liability remains disputed.

## III.     Redaction Requests

The parties have submitted redaction requests as part of their summary judgment materials. First, Plaintiff requested the Court's permission to file redacted copies of exhibits to its damages expert's report. Dkt. No. 147. Second, Plaintiff requested permission to file redacted copies of exhibits to its reply memorandum. Dkt. No. 160. Third, Defendant submitted a redaction request with respect to a line in its memorandum that referenced one of Plaintiff's proposed redactions. These applications largely comport with the applicable standard in this Circuit for filing under seal—articulated in *Lugosh v. Pyramid Co. of Onandaga*, 435 F.3d 110, 119–20 (2d Cir. 2006)—and are therefore largely approved.

Plaintiff supports its requests by explaining that the requested redactions preserve the confidentiality of its financial information and the details of prior confidential settlement agreements. Plaintiff also notes that it submitted redacted materials relating to consumer names pursuant to a sealing order previously entered by Magistrate Judge Netburn. Defendant opposes these requests, arguing that the information Plaintiff seeks to redact is crucial to the Court's determination on summary judgment and therefore is entitled to the presumption of public access. Dkt. No. 148. It emphasizes that the cases in which courts have approved redaction of business information tend to be those cases in which the underlying information was collateral to the issue before the court. *Id.*

Under *Lugosh*, judicial documents presumptively warrant public access. 435 F.3d at 119–20. In this case, that presumption is in large part outweighed by "competing considerations." *Id.* at 120. In particular, requested redactions referring to confidential

settlement agreements and month-to-month product sales concern confidential business information that could harm Plaintiff's competitive standing. Courts in this circuit, including the undersigned, regularly approve similar redaction requests. *See In re Digital Music Antitrust Litig.*, 321 F.R.D. 64, 82 n.1 (S.D.N.Y. 2017) (concluding that "internal pricing strategies and competitive pricing data[ are] sufficiently sensitive to warrant redaction"); *Avocent Redmond Corp. v. Raritan Am., Inc.*, No. 10-CV-6100 (PKC), 2012 WL 3114855, at *16 (S.D.N.Y. July 31, 2012) (approving sealing of documents "because they include confidential business information—market forecasts, sales, inventory management, profit margins, etc.—the disclosure of which would cause competitive harm"). However, the Court rejects Plaintiff's redaction requests with respect to its expert's royalty rate determinations in the present case. Plaintiff has not explained with the required specificity why aggregate product sales or a royalty rate conclusion will hamper its competitive standing.

Accordingly, the Court hereby GRANTS the parties' applications except as next stated. It DENIES Plaintiff's application with respect to the following proposed redactions to the Jeffords Declaration 1: the redactions proposed on page 10; the first redaction proposed on page 29; and the final redaction proposed on page 30. It further DENIES Plaintiff's application with respect to the following proposed redactions to the Jeffords Declaration 2: the redactions proposed on page 3; and the redactions proposed on page 9. Within 10 days of the issuance of this Opinion and Order, Plaintiff is hereby ordered to resubmit a highlighted copy of its redaction request to the Court complying with the above determinations. Plaintiff is further ordered to re-file compliant redacted documents on the public docket.

## IV. Conclusion

For the foregoing reasons, Defendant's motion for partial summary judgment is granted with respect to the '207 patent and with respect to the '626 patent and denied on its remaining grounds. Plaintiff's motion for partial summary judgment is granted with respect to validity of the '006, '282, '693, and '867 patents and with respect to Defendant's waived affirmative defenses and counterclaims. Its motion for partial summary judgment with respect to the '207 patent is denied as moot. Its motion for summary judgment on damages is denied.

This resolves Docket Nos. 134, 147, and 149. A status conference will be scheduled by separate order.

SO ORDERED.

Dated: September 30, 2018

New York, New York

ALISON J. NATHAN
United States District Judge